We start with 23-1041 Davis versus Metro North Commuter Railroad. And I understand counsel for the appellant would like to reserve three minutes for rebuttal. Is that right? Yes, your honor. Okay. And I just remind everybody when you do come up to the podium, please take a minute if you'd like to adjust the height of the podium. There's a black switch on the right on the top. Feel free to raise it or lower it to whatever height is convenient for you and to adjust the microphones. That ensures that we'll hear every word that you say. Because, believe me, we're hanging on your words. My experience is that the only people who easily operate them are high school students. They're here in a moot court. They're terrific. Okay. Counsel, whenever you're ready. Thank you. Your honor, may it please the court. We've got a pretty thick appendix in this case for an appeal of a 12B6 motion. And the reason for that is that the court below relied on over 70 pages of exhibits annexed to the defendant's motion on the pleadings in dismissing the case. It's well beyond the four corners of the complaint to rely on exhibits annexed on the moving party on a 12B6 motion. Well, sometimes you can and sometimes you can't. It depends on whether they're incorporated by reference implicitly enough or explicitly enough. So why don't you identify if there are particular ones you think should not have been considered and that you think prejudiced your client. Why don't you focus our attention on those? Oh, I think that's accurate, your honor. And the court below didn't conduct any analysis as to the reliance of the complaint on these exhibits or their integrality. No, no, we did that. Go through the bad ones. Okay. Go through the bad ones. We had limited time. Fair enough. The court relied on a text message to my client that we produced in discovery to defendants where his union representatives said. Is this exhibit H? Yes, this is exhibit H. Okay. Tell us about H. So the text message is from his union reps saying, hey, we heard that they're willing to reinstate you if you admit guilt, take a suspension, la, la, la. Within an hour before my client responds to that text, he says, we're going to meet with them tomorrow to discuss the offer. Then that meeting never happened. So the offer never actually materialized. And then the court below said, well, I'm distinguishing all of your comparators because they were offered a waiver and accepted it. And so the complaint explicitly pleads time and time again that my client was never actually offered a waiver. He was never not pre-hearing, not post-hearing. And actually defendants don't dispute that he wasn't offered anything pre-hearing, which goes more to the selective enforcement claim. One of the questions that I have, and I don't want to interrupt because I do think the march through which ones you think are problematic are going to be helpful to us, but you could argue that it was improperly integrating, but you could also argue that these were issues of disputed back that shouldn't have been. So I don't, and sometimes the brief sounds like it's issues of disputed back. Other times it sounds like you're concerned that they relied on it and the motion dismissed. When you're going through them, if you could articulate which bucket the offending exhibit you think falls into. Thank you, Your Honor. Yeah, I absolutely agree, and I actually think that exhibit falls into both buckets because that is a disputed fact as to whether my client was offered a waiver. So even if this was a Rule 56 motion for summary judgment, I think it would be improper for the court to say we're ignoring the pleadings, we're going to conclude based on this text message that explicitly says I'm going to meet with them about the offer, and then the testimony that's undisputed is that meeting never happened to say the waiver actually materialized. Just so I can understand your argument with exhibit H analytically, you say two buckets. Is it sort of two buckets in the alternative? Like is your first line of argument exhibit H should not have been considered, therefore there is only one side of the story before the court, which is there was no settlement offer, period. So there was no dispute. Your backup argument would be even if you considered H, to the extent it contradicted your client's allegations, that would be a disputed fact which could not be resolved against your client. That's precisely correct, Your Honor. Okay. Yes, and I think there are multiple instances of that. It's exhibit H, but there are other exhibits, too. But I think to go back. Well, we actually want to hear, the original question was which one they are. So exhibit H or the other ones. Exhibit H. I think, you know, there was reliance on the CBA, and there's an argument that, well, it doesn't matter that you were required to schedule the hearing within a week of when the disciplinary charges were filed and that you were required to have a conciliation meeting for the purpose of settlement. I'm sorry, this is exhibit F now. Yes, yes. What's the problem, though? Didn't he reference the CBA? The court did reference the CBA. No, no, no. Was it referenced in your complaint? The CBA was referenced in the complaint. So how is that not incorporated improperly? You're right. The CBA, it's not that the CBA, this is the disputed fact issue. So you're right. You're right. I was inarticulate in that regard. But, you know, there are a lot of red flags in terms of selective enforcement or due process here about how my client wasn't treated the same. It's the engineer who took full responsibility for the collision, the other- Hang on, back up. Yeah. I understand there are multiple strands of your argument in your brief. Let's just, for organizational purposes, stick with the first category of what materials that were not in the complaint, in your view, did the district court improperly rely on? And maybe if you could just stick with that line first, and then you can move on to whatever else. I just want to get that sort of basic, you know, the key ones.  I think that H is the one most relevant, as we've discussed, because it was used to exclude every single comparator we brought up. And if you were right on that point, which claims would that revive for you? The Title VII? The selective enforcement. But then you really have to deal with malice as well, though, right? Yes, that's correct, Your Honor. So Exhibit H is not an on-off switch on its own for your selective enforcement claim, right? That's correct. You've got to do some more work to get that back, right? That's correct. It's not dispositive on that one, which then goes to a different allegation that literally was unaddressed in the decision below, which is that when my client was suspended, but before the hearing was held, he wasn't allowed to work, he posted a picture of himself on a boat and was told by the defendants that they considered that a, quote, big middle finger to them. I'm sorry. Did you just concede that that is your evidence of malice? It's not the only evidence of malice, certainly. Certainly not the only evidence of malice. The entire way that my client was prosecuted is not the right term. But all of the other factors of refusing to hold the mandatory pre-hearing conciliation meeting for settlement, delaying the hearing for six weeks when it was required to be held within a week, then at the hearing introducing statements of witnesses who my client was then not allowed to cross-examine at the hearing. So if I can summarize, tell me if this is an accurate characterization of your argument or not as to malice. In addition to the photo comment, you're suggesting that a series of procedural irregularities constitutes the corpus of facts from which one can infer malice. Is that fair or is there something beyond the procedural irregularities that you've alleged and the comment on the photo that to you bespeaks malice? Oh, all of the documents that the court ruled were integral, that the plaintiffs attached on our motion, that show explicitly that the decision-makers decided in advance of the hearing that they were going to terminate my client, in fact, the day the collision happened. Before the hearing had been conducted and therefore they didn't know what the facts were. And there's an email where they said we're going to fast-track the hearing with an eye towards termination. That is certainly evidence that the outcome was preordained and that they were going after my client, that there was malice and they weren't just following the facts where it led them. In some ways, that's a subspecies of procedural irregularity, right, is prejudging a case. But I see that you're saying that that particular procedural irregularity is particularly probative. Right, I would say it's outcome determinative under a doctrine that doesn't apply here. But, you know, I wouldn't call it just procedural irregularity. I mean, I think there's a question of, and the person who made that announcement was the person who decided to fire my client. We kept you up beyond your time. Oh, I'm sorry. No, no, we kept you. Unless there's another question right now from the panel, why don't we hear from the counsel for the appellee. And Mr. Bernstein, we'll hear from you again shortly. Thank you, Your Honor, and may it please the Court. My name is Jennifer Mustis, and I represent Appellees Metro-North Commuter Railroad, Andrew Paul and John Longobardi. The district court properly dismissed with prejudice appellate's procedural due process, selective enforcement, and Title VII claims, and its decision should be affirmed in all respects. I'll address the issue about reliance on the exhibits that came up with appellate's counsel. Frankly, I don't believe that the court even really needed to reference the exact Exhibit H to get the allegation that there had been an offer to reinstate Mr. Davis. If you look at paragraph 46 of the second amended complaint. Bear with me one second. I'd like to follow along with you on that. You said there's paragraph 46? Correct. Okay, go ahead. It indicates that the union representative informed Mr. Davis that defendants were going to fire him unless he admitted guilt and forfeited any right to appeal. I don't believe that actually even looking at the exhibit adds that much more than the allegation that was actually in the pleading that Metro-North had set forth a process by which Mr. Davis could be returned to work, but it would require him to enter into a waiver agreement, almost akin to like a plea bargain in a criminal case, and Mr. Davis had no interest in doing that. He declined the opportunity. I would further reference. Where does it? I'm just looking at 46, and let's just break it down. So what is the line that, in your view, constitutes his allegation that there was a settlement offer? Starting at the very first line, Mr. Davis's union representative informed him they had heard defendants were going to fire Mr. Davis unless he admitted guilt and forfeited any right to appeal. Okay, so this is just saying that the representative said that. I'm looking down at the end of that paragraph where it says defendants never actually made a settlement waiver offer to Mr. Davis. He alleges that. So he says somebody told me this is the way it was going to be, but this is not the way it actually was, right? Your Honor, I would also point to an earlier admission. No, no, no. Let's talk about that part. Just break down. Why would that latter statement, again, at the motion to dismiss stage, not be construed in favor of the non-moving party to say there was no settlement offer? Because you're trying to argue, right, that the district court could read this and say there was a settlement offer, right? I mean, I think my sort of backup argument to that is that this certainly incorporates by reference the text message. This is essentially a paraphrase of the text message, and the district court appropriately then considered the message. But even before you get to that, it's not clear to me that this allegation is inconsistent with our argument that Metro North was open to Mr. Davis returning to work, and Mr. Davis had no interest in accepting those terms. Well, that's a little different, right? That's like saying we never offered him a settlement, but he admitted that he never would have taken it anyway. So whether we were going to offer him a settlement or not is immaterial. But that's a different argument from saying he admitted we made him a settlement offer, right? And I don't know exactly what the allegation, if it means that there was no piece of paper directly conveyed to Mr. Davis. I mean, these negotiations go through the union representatives. Well, we don't know what it means, and so we have to construe it in a way that could be read in the light most favorable to him. Maybe you're right. Maybe there was a verbal offer, and it just wasn't put on paper. Or maybe he's lying, and maybe there was paper, and maybe there were 16 witnesses to it. But we've got paragraph 46, and he says there was, no, that defendants never actually made an offer to him. So we're stuck with that, right? Yes, although I still think there's some tension between the allegation earlier in that paragraph, but then I would also say that this clearly incorporates by reference the text message that it's paraphrasing. So then don't you get into his backup argument that, ah, if there's tension between an allegation and the complaint and a way to read the text message, now we're in summary judgment land, right, or we're in factual dispute land. Well, I believe there's also case law that allegations need not be credited that are contradicted by materials incorporated by reference in the pleading. And where does the text then tell us how Exhibit H, assuming it was incorporated, somehow conclusively that he is incorporating it by reference and it conclusively disproves that he is paraphrasing Exhibit H and he's just now self-evidently falsely paraphrasing it to us? So, I mean, paragraph 46 says Mr. Davis's union representative informed him. So, you know, referencing the communication. So isn't that the sentence that paraphrases Exhibit H? Well, I believe then it continues on, sought to meet with defendant's president, which is also referenced in Exhibit H. I mean, I would argue the whole paragraph is a description or paraphrase of the text message. And the text message itself asks, let me know what you want to do, clearly indicating that the offer has been made and Mr. Davis is now in his court to respond. Or they're exploring whether maybe there's going to be an offer. And also later on. And they say, well, hey, you know, these are negotiations. They're sounding me out about what would happen if there were a settlement. If there were a settlement, what would you do? And later on in the text message, which is also paraphrased in paragraph 46, it says they want to see the president about the offer. Clearly, the union representative believes there's been an offer made. You keep saying clearly, but part of the challenge is that there's an alternate interpretation. Yours may be accurate, but what I'm not hearing is why there is no interpretation that could contradict your view. Your Honor, I'd also point the court to judicial admission in a prior round of briefing. So this is document 31-6, in which Mr. Davis admitted that he declined to sign an admission of guilt as he was entitled to, because he maintained that he was not responsible for the train collision. So indicating again that Mr. Davis understood that there was an option available, and he declined to take that option. Can I just ask you then, hypothetically, not asking you to concede anything, but let's say we were to disagree with you on Exhibit H. And let me posit the situation that we decide it should not have been considered by the district court. Let's say that's the cleanest hypothetical I give you. So Exhibit H is out. And let's also posit that we interpret Paragraph 46 to state, to allege, that there was no settlement offer. If that is the case, if that were the case, what would the consequence be for the Title VII claim in your view? I think the Title VII claim would still be an uphill battle for appellant. Appellant continually references the treatment of the other crew members on the train that Mr. Davis was operating, but doesn't allege anything about their races. So it doesn't create an inference of racial discrimination there to say Mr. Davis was treated differently than those crew members. There's nothing in the record about their races. Several of the other comparators for the Title VII claim, it's completely conclusory allegations. It doesn't identify the title. I'm actually interested in that part. I'm looking at two particular parts of the opinion, page 17, where there's a reference to evidence. You know, Davis failed to produce evidence of discrimination. Why? And it happens twice in short order. And obviously he wouldn't need to produce evidence of a comparator at a motion to dismiss. Why should we not be concerned that there was a bit of a muddiness on the standard that was to be applied at this juncture? I don't want to speculate about the use of that particular term. Of course, it's de novo review by this court. So if there's, you know, adequate allegations, then that would be one thing. But we would argue that there still needs to be. I'm sorry. Would you agree that it is not the appellant's burden to produce evidence at this stage? Correct, Your Honor. But there do need to be factual allegations to render the allegation plausible. And so by saying that Mr. Davis was treated differently than the other train crew members, but not alleging their races, it doesn't lead to any plausible inference of racial discrimination. OK, but if he said that Bungie was white and the others were non white, that's an allegation, right? I mean, it still doesn't allege that Ms. Bungie engaged in conduct that's comparable to Mr. Davis. In fact, he said that it was worse, that it was more that it was more it was it was more egregious and more problematic. I think the district court properly pointed out that was a completely conclusory allegation. There's no right because they want the district court wanted evidence. Right. That this was comparable. Would you disagree? I don't know that I would read so much into the the the use of the term evidence. I mean, the the complaint did incorporate a lot of factual information. I think the district court could properly consider. And so there there may have been some, you know, imprecise terminology. But I don't think the wrong standard ultimately was can I ask you about how the district court analyzed the comparison with Bungie? And I'm looking at page 16 of the ruling. As I understand it, the district court rejected Bungie as a comparator on the ground that Mr. Davis was offered an opportunity to return to work. And that's the only basis on which the district court found that Bungie was not a proper comparator. Is that correct? Or did the district court suggest there were other flaws in the comparison? And again, just to be clear, I'm not asking your position as to whether there were differences. Just what were the differences that district court identified? Because I think if I'm reading this right, the district were only distinguished based on the opportunity to return to work. I believe the district court thought that was sufficient to distinguish. I do agree. There would be other. Right. But in terms of limiting ourselves right now to what the district court based its ruling on, it was on that single factor, right? Correct. Although, of course, this court wouldn't be limited. We could affirm on any basis apparent to the record. But if we were to disagree with the court on that point, for example, if we determined that Exhibit H should not have been relied upon at the motion to dismiss stage, what would your alternative ground for affirmance be with respect to Bungie? I believe there are not allegations that Ms. Bungie engaged in comparable misconduct to Mr. Davis. Yeah, but just flesh that out. What makes it so self-evident that one cannot, even construing the facts of their life, most reasonable to the non-moving party, one cannot say that they were comparable? So just flesh that out for me. Sure. There's no allegation here that Ms. Bungie was alleged to have covered up a collision that occurred with passenger equipment on the mainline track, an incredibly serious occurrence, and something that really undermined the trustworthiness of the individual. I do acknowledge that there are some allegations about some behavior with respect to examinations with Ms. Bungie, but that is also of a different character. Mr. Davis's conduct with respect to this- I just need to stop you. She was caught cheating on a test while in engineering school. Like, the trustworthiness? Do you have a better argument than the trustworthiness? Also, Mr. Davis's behavior was very concerning in light of his long tenure. Ms. Bungie and many others made a mistake when they were in training that was discovered many years later. Mr. Davis had been employed as a conductor for 20-odd years and on the mainline involving a collision with passenger equipment. Quibbling over whether or not they're comparators, not actually pointing out what they weren't alleged, and that kind of quibble may be right, but at a motion to dismiss, is it appropriate to be trying to say, this kind of cover-up is worse than this kind of cheating, which is basically where you're doing? I mean, I understand that you would have reasons to say that they weren't appropriately comparators and there's a justification for treating them differently, but we're at a motion to dismiss. Correct, Your Honor. Our primary argument concededly was the fact that, just like Ms. Bungie, Mr. Davis had the opportunity to remain employed and declined that opportunity. So that was our primary basis. Let me just see if there are any further questions. No, there are not. Thank you very much. And we have your argument. Why don't we hear from Mr. Bernstein, but we're going to keep you to three minutes of rebuttal. So, just your highlight points. Well, I mean, I'd ask you to actually focus on the fourth prong about how the adverse action gave rise to the inference of discrimination. Okay. A lot of that relies on the comparator evidence that we've just been discussing. You know, you can show that your termination occurred under circumstances giving rise to an inference of discrimination if other people outside of the protected class who are comparators, at least at the pleading stage, were treated differently. And to take Danielle Bonge, who we just discussed, she didn't just cheat on the test, she was indicted. And if we want to say, well, okay, that goes back to can we distinguish her on the waiver and Exhibit H and everything. I'm sorry, say that again? Danielle Bonge was indicted for cheating on the engineering exam. Where's that in your complaint? It's in the complaint. I couldn't tell you the paragraph number off the top of my head, Your Honor, but it's certainly in there. We knew that. Oh, criminally charged. I see. Criminally charged. I was looking for the word indictment. Yes. And if we're going to say, well, okay, here's another way to distinguish them with the waiver. What about the conductor who wasn't even brought up on charges? They ran into a passenger train where people were on it. And so it goes to are conductors held responsible for the conduct of the engineer when the train crashes? Would you concede that Dan Hannan doesn't have a racial allegation attached to him or there's no indication of his race? Am I missing it? Yes, that's correct, Your Honor. Okay. So then you've got the last chance waivers on Tom Dunn? Tom Dunn, yes. Is he, where is it? Is the several white, is 53 supposed to be following everybody else that follows? White, McDuffie, Calabrini, Golden? Because neither of them have their races alleged, either. Okay. I think for Dunn it was explicitly alleged. You may be right that I said something along the lines of other white comparators and listed people it didn't explicitly say. And these people are also white. But I think if you look at those pleadings in their totality, it's pretty clear that that laundry list of people are all outside of the protected class. Okay. Thank you. All right. Thank you very much. We will take the case under advisement.